This proceeding was instituted by the New York, New Haven and Hartford R.R. Co., a corporation organized under the laws of the state of Connecticut, to condemn, for railroad purposes, certain lands of the defendants, in the village of New Rochelle. It was opposed by the defendants upon various grounds; but the only one we deem it necessary to discuss is that the plaintiff, as a foreign corporation, had received its only powers through a special act of the legislature of this state (Chapter 195 of the Laws of 1846) and that they were long since exhausted. The argument is made upon the proposition that, as a foreign corporation, it could acquire no right to condemn lands in this state, unless such right were expressly conferred by statute; and that it cannot avail itself of the powers given to corporations of this state by General Railway Acts. By the special act of 1846, the petitioning company (then the New York and New Haven R.R. Co.) were given "permission and authority * * * to continue and extend their railroad from the dividing lines of the states of New York and Connecticut, by such route as shall be established by said company, through the county of Westchester, to the New York and Harlem R.R. Co.'s line of road etc. etc." Provision was made for the location of its route, in such manner as should be approved by three commissioners, to be appointed by the governor. Power was given to purchase and hold such real estate, as might be necessary and convenient in accomplishing the objects of the act. It was authorized to construct a railroad, with one or more tracks, on the course designated by its directors and all essential powers were conferred to enable it to construct, maintain and to initiate its operation within this state.
It must, of course, be conceded that the provisions of the *Page 414 
special act would be ineffectual to authorize the condemnation of lands, not required for the precise purposes of the act and to carry it into effect, in the continuation of the petitioner's road between the points named in this state, and that they gave no power to acquire lands by condemnation proceedings after the railroad was constructed, as therein intended and provided for. At that time, and at all times prior to the adoption of the Constitution of 1846, railroad corporations were created by and derived their powers from special laws. Subsequently, pursuant to the authority with which the legislative body was invested by the Constitution adopted by the people in 1846, general railroad laws were enacted; with the object of placing the railroad companies within the state upon a footing of equality, as to their privileges and powers and as to their duties and liabilities. The general act of 1850 (Chap. 140 Session Laws 1850) endowed "all existing railroad corporations within this state" with all the powers and privileges and subjected them to all the duties and liabilities and provisions contained in the act; so far as they should be applicable to their charters. By that act authority was conferred upon railroads, organized under its provisions, to condemn lands for the construction of their roads; but that authority was broadened by subsequent legislation, so as to provide with respect to all existing corporations for the case where additional land might be required, after the construction of the railroad and for the purpose of operating it. Then, in 1892, (Chap. 565 Session Laws), was placed upon our statute books the present General Railroad Law; which, in its fourth section, gave power to "every railroad corporation" to acquire by condemnation such real estate as may be necessary for the construction, maintenance, or accommodation of its railroad. By the seventh section, "all real property, required by any railroad corporation for the purpose of its incorporation, shall be deemed to be required for a public use;" and the right is given to it to acquire title to the real estate required, by condemnation, "where it shall require any further rights to lands, or the use of lands for switches, turnouts etc. etc." It seems *Page 415 
very clear to us that under the law as it stood before the present General Railroad Act, as well as under it, the petitioner was included in the general gift of authority to acquire additional real estate; where, as is the case here, it was needed for its proper operation and to accommodate the road to the growth of its business and to meet the public demands of travel and traffic. The expressions "all existing corporations" in prior legislation and "any railroad corporation" in the present general law must be taken in their comprehensive sense; unless the legislature is inhibited by the fundamental law of the state from delegating to other than domestic corporations the power to exercise the right of eminent domain. An argument is based upon the supposed effect of the provisions of the General Railroad Law, as it was, or as it is, upon the charters of corporations, and upon the supposed conflict with the special act of 1846. We cannot find any such difficulty in bringing the foreign corporation, authorized to operate its road within this state, under the directions and restraints of this law. With respect to whatever rights it acquired, through the permission and authority given by the special act of 1846 to maintain and operate its road here, they were, necessarily, as much subject to subsequent legislation in their regulation, as were those acquired by the corporations of this state. There should, and can, be no question but that, except where the provisions of their charters come into material conflict, corporations, without discrimination as to their origin, lawfully exercising their franchises within this state, were dealt with in the General Railroad Law and brought under a uniform system of legal rules and procedure, in the conduct of their affairs and in the operation of their roads. But the question here is whether the legislature of the state could competently authorize foreign railroad corporations, as well as those organized under our laws, to acquire additional lands by condemnation. If it could, it must be deemed to have done so by this general law. There is nothing in the Constitution of the state, which limits the legislature in the exercise of the right of eminent *Page 416 
domain. Its dominion is as broad as the confines of the state and it may appropriate any part of the property within the state; subject only to the conditions that the appropriation shall be for a necessary public use and that reasonable compensation shall be made. There is no restraint upon its selection of a corporation created by the laws of another state, as an instrument to carry the appropriation to the public use into effect. (Matter of Townsend, 39 N.Y. at p. 175.) In the present case, the petitioner, under the special act of 1846, was authorized to carry on a part of its chartered business and to operate a portion of its road in this state. Pro tanto, it is settled here under the sanction of our laws and, to the extent of its existence and operation here, in the contemplation of those laws, it is, pro hac vice, a state corporation. (Matter ofTownsend, supra.) The public interests were deemed to be promoted by permitting it to come within our borders and there to conduct its chartered business. That permission was an act which recognized its existence as a corporation in this state. Existing here as a corporation, the act, under which it exists, has neither exempted it from such general duties as apply to corporations generally within this state, nor precluded it from enjoying those general privileges which they enjoy, and which the public interests, in connection with the operation of a railroad, require that these quasi public agencies should possess. Those interests demand that the foreign corporation, operating its road here for their benefit, should have the same powers, as corporations organized here have, to acquire additional lands for the adequate transaction of the corporate business.
To hold otherwise would be, in our judgment, illogical and without sufficient warrant in the law. It is easy to show, from the reading of the various sections of the present General Railroad Law, that the intention of the legislature was to include every railroad corporation actually within the state, without discrimination. This the respondent's counsel has well pointed out in his brief. As one of the corporations referred to in the General Railroad Law, those provisions of *Page 417 
the Code of Civil Procedure, which constitute the whole law of procedure upon the subject of condemnation, must govern in the proceedings to acquire the lands required by the company. The procedure of the special act of 1846 was limited to the precise accomplishment of the purpose of the act. With the construction of the road and its completion for operation, the provisions as to procedure ceased and became unavailable for the future acquisition of additional real estate. The power conferred by the General Railroad Law could only be exercised in accordance with the law of procedure, as enacted by the legislature to govern in all cases of the condemnation of real property for public use. (Section 3359, Code Civ. Pro.)
The order appealed from should be affirmed, with costs.
All concur.
Order affirmed.