used in the treaty, refers to the government making the requisition and receiving the fugitive. People v. Supervisors of Columbia Co., 134 N. Y. 1, 31 N. E. 322. The contention then is that, it being the duty of the government to incur the necessary charge and expense in the apprehension of the plaintiff's bookkeeper, the payment of moneys to the defendant, who was the agent of the government, was a voluntary payment, and therefore may not be recovered back. In this contention the defendant apparently loses sight of the fact that the plaintiffs are not seeking to recover back the sums of money which were actually expended by the defendant in the extradition of the bookkeeper. They concede that the defendant is entitled to every dollar that was legitimately expended by him for that purpose. What they seek to recover is a sum which they advanced to him to be used in case of necessity, and which he agreed to return in the event that there was no occasion for its use, and as to such sum there is no opportunity for the application of the doctrine of voluntary payment.

The further point is made that the money was paid to the defendant in violation of law, and therefore the plaintiffs are precluded from a recovery. This claim is sought to be founded upon section 51 of the Penal Code, which declares that:

"An officer of this state who asks or receives any fee or compensation of any kind for any service rendered or expense incurred in procuring from the governor of this state, a demand upon the executive authority of a state or territory of the United States, or of a foreign government, for the surrender of a fugitive from justice; * * * is guilty of a misdemeanor."

The answer to it is furnished in People v. Supervisors of Columbia Co., supra, where it is held that this section has reference only to interstate extradition, and does not apply to extradition from foreign countries, as the governor can have no power under an international treaty to make demand upon a foreign government for the surrender of such fugitive.

The judgment should be affirmed, with costs. All concur.

---

(17 App. Div. 392.)

PHELPS v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, First Department. May 7, 1897.)

COURTS—JURISDICTION—RESIDENCE OF PARTIES.

The question of plaintiff's residence was properly submitted to the jury where he testified that when he came to New York, three years before, to work as brakeman on a railroad running from New York into another state, he intended to live in New York permanently, that he did not thereafter consider the place from which he came as his home, that he slept in New York City on the nights when his occupation did not require him to be elsewhere, and that he had a regular eating place there, though other witnesses testified that plaintiff had never changed his residence, and extracts from letters were introduced to show that he had spoken of such place as his home.

Appeal from trial court, New York county.

Action by Nathan R. Phelps against the New York, New Haven & Hartford Railroad Company for personal injuries. From a judgment

for $13,000 damages and $366.64 costs and disbursements, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before RUMSEY, WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

Henry W. Taft, for appellant.
Theron G. Strong, for respondent.

O'BRIEN, J. The defendant has waived all questions that might be raised upon the appeal from the judgment and the order, except the claim that the plaintiff cannot maintain this action because it arose at Fairfield, in the state of Connecticut, and the defendant is a foreign corporation, organized under the laws of the state of Connecticut, and the plaintiff himself is a resident of that state. The sole question, therefore, is whether it appears by a preponderance of evidence that the plaintiff, at the time of the commencement of the action, on December 26, 1894, was a resident of the state of New York. The defendant claims that he was a resident of the state of Connecticut, within the meaning of section 1780 of the Code of Civil Procedure, which defines the cases in which the courts of this state may entertain actions against foreign corporations. Upon this subject the plaintiff testified that at the time of the accident, and when the action was brought, and at the time of the trial, he resided in New York; that when he received the injuries he was 23 years of age, and at that time had been in the railroad business as a brakeman for 9 or 10 years, commencing at Saybrook Point, Conn., where he worked about a year and a half, and, after working for a time on a train leaving Saybrook and running through to Hartford, he left that road, and went to work on a train running on the New York division of the defendant's road; that he worked for over a year on that train, and then went on what was known as the "Pier 50 Train," upon which he had been working, according to his statement, about two months, when he was injured. Other witnesses state that he had been working as much as seven months on the Pier 50 train. He had thus been running on a train from Connecticut into New York for a period variously estimated by the witnesses as from 14 to 19 months. The plaintiff was born in Saybrook, where his family resided, and still reside. He had only been to New York to visit before he ran on the New York division; but he stated that he intended and claimed New York to be his residence, and that he had such residence at the time of the accident, September 16, 1893. When asked where he lived, he said at the corner of 129th street and 3d avenue; but further questioning showed that he had no room there, but only took his meals at a restaurant at that place. When his train was in New York over night, he slept in the caboose of the train. He was not a married man, and never had been. Since coming to New York to work, he had spent no time in Saybrook, and had no interest there, and only went there for an occasional visit to his father and mother, who resided there. He further testified that when he came to New York to work it was his intention to abandon Saybrook as a residence, and take up his residence in New York; and that when he testified he lived in New York at the time he was hurt he meant that he made his home in New York,

because he resided there most of the time; that he made Sullivan's
restaurant on the corner of 129th street and 3d avenue his regular
place for procuring his meals; that he was in New York Saturday
night and Sunday night, and every other night except the three nights
in the week when he was required to be in New Haven, and that he
had made up his mind to come to New York to live permanently when
he first went to work on the train. Upon being injured, the plaintiff
was taken to the hospital in Bridgeport, where he remained about
six months. From there he went to Saybrook, to his father's house.
In the fall of 1894 he came to New York, with the purpose of residing
there, and intending to stay there; and, while he had no business
there, he did not know but that he might get some. During this time
he rented a room in Forty-Second street, and paid for it. In the latter
part of March, 1895, he returned to Saybrook, where he remained until
about October, 1896. He had no intention, when here, to return to
Saybrook, but went back to make a visit, and only made up his mind
to do so a day or so before he started. He states that he did not
expect to go back there as soon as he finished his business here, and
did not consider his permanent home there, nor call it his home; that
it was his folks' home, and he used to go and see them once in a while;
that during all the time he was in Saybrook he kept a room in New
York at 405 West Forty-Second street, and paid for it; his sister oc-
cupied it, but it was not her room, and she held it for him, but did not
contribute anything to the payment for it; and that this was the
same room that he occupied when he was in New York. Two wit-
nesses, residing in Saybrook, were produced, who knew the plaintiff,
and said he had always resided in Saybrook; and extracts from cer-
tain letters were introduced to prove that the plaintiff had spoken
of Saybrook as his home.

We have thus summarized substantially all the testimony bearing
upon the question of plaintiff's residence, which, against the defend-
ant's exception, the learned trial judge submitted to the jury as a ques-
tion of fact. At the defendant's request, the judge charged:

"First. If the jury find that Connecticut was the permanent residence of
the plaintiff on November 26, 1894, then this court is without jurisdiction,
and the plaintiff cannot recover. Second. If the plaintiff came to New York
before the commencement of this action, intending to acquire a residence here
for the sole purpose of commencing this action, and, as soon as this action
was completed, to return to his home in Saybrook, he did not acquire a per-
manent residence which will entitle him to maintain this suit in this court,
and the verdict must be for the defendant. Third. In order to acquire such
a residence as would entitle him to maintain this suit in this state, it is nec-
essary for him to show that he intended to establish a permanent residence
in New York City, and to abandon his residence in Saybrook. Fourth. If,
when he came to New York, he only had the intention of leaving his ordi-
nary home temporarily for a particular purpose, he acquired no residence in
New York such as was necessary to commence this action. Fifth. In order
to find that the residence of the plaintiff was in New York at the time of the
commencement of this action, it is necessary for the jury to find that that
place was actually the chief seat of his affairs and interests, and that it was
his intention that it should remain so."

Although, therefore, the defendant objected to the submission of
that question to the jury as one of fact, no exception was taken to the
charge upon that subject as made by the learned trial judge; and,

if it was a question of fact, and one which should have been submitted to the jury, their verdict is conclusive. It would serve no useful purpose to multiply definitions upon the question of residence as that word is used in the different sections of the Code, because in every phase it has been defined and explained by many authorities. Dupuy v. Wurtz, 53 N. Y. 556; Gundlin v. Packet Co. (Com. Pl.) 28 N. Y. Supp. 572; Prentiss v. Butler, 13 N. Y. Supp. 757; Bassett v. Wheeler, 84 N. Y. 466; De Meli v. De Meli, 120 N. Y. 485, 24 N. E. 996; Barker v. Steamship Co., 91 Hun, 495, 36 N. Y. Supp. 256. Briefly stated, what is essential is the intent accompanied by the act of abiding at some place. With respect to unmarried men, such as the plaintiff was, many of whom live at clubs, hotels, and restaurants, and who are accustomed to go from place to place, it is often difficult to determine just what place is to be regarded as their permanent abode. The fact that the plaintiff's sleeping place while in New York was a car or caboose, while dwelt upon by the appellant, cannot be deemed as controlling; because, if he had occupied a bunk in one of the defendant's buildings, or even a room near the railroad yard, his place of abode would have been no more fixed or permanent, from a legal standpoint, than if he had occupied a car. As said in Guier v. O'Daniel, 1 Bin. 349:

"On a question of domicile, the mode of living is not material,—whether on rent, at lodgings, or in the house of a friend. The apparent or avowed intent of constant residence, not the manner of it, constitutes the domicile."

Taking the fact, therefore, that the plaintiff, from the time he came to New York upon the New York division up to the time of his injury, seldom went to Saybrook, coupled with his statement that he left that place when about 20 years of age, and that when he came to New York he made up his mind to live there permanently, and that he did not consider that in October, 1894, Saybrook was his home, the evidence was not so clearly preponderating against the plaintiff's testimony as to the place which he considered his residence that the court would have been justified in determining the question as a matter of law; and, on this ground, dismissing the complaint.

In Barker v. Steamship Co., supra, where the question of jurisdiction was raised, it was held that the plaintiff's residence refers to the time when the action was begun. As therein said:

"The testimony does not conclusively show that the plaintiff was not a resident of this state when the action was begun, and the presumption of jurisdiction is not rebutted. If it can be said that the evidence is capable of different inferences as to the place of residence of the plaintiff, the answer is that the jury has drawn the inference and determined the question in his favor. In case the jurisdiction of a court of general jurisdiction turns upon a question of fact, the issue must be determined by the jury."

Our conclusion upon the facts here presented is that the testimony upon the question of plaintiff's residence was conflicting, and was properly submitted to the jury.

We do not discuss the question as to whether the defendant is a foreign corporation, though, so far as its capacity to sue and be sued in the courts of this state is concerned, it is to be regarded as a corporation of this state (Railroad Co. v. Welsh, 143 N. Y. 411, 38 N. E.

378), preferring, as we do, to rest our decision upon the ground that, assuming it to be a foreign corporation, if the plaintiff was, as the jury found, a resident of this state, he was entitled to maintain this action.

The judgment should therefore be affirmed, with costs.

RUMSEY, WILLIAMS, and PARKER, JJ., concur.

INGRAHAM, J.  I concur in the result, on the ground that the defendant, under the authority by which it maintains and conducts its operations in this state, is subject to be sued in the same manner as corporations created by the laws of this state.  Pro tanto, it is settled here under the sanction of our laws; and to the extent of its existence and operation here, in the contemplation of those laws, it is pro hac vice a state corporation.  Railroad Co. v. Welsh, 143 N. Y. 411, 38 N. E. 378.