ISABELLE G. BUMP, as Administratrix, etc., of ALLEN BUMP, Deceased, Respondent, *v*. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

*Negligence — proof of the plaintiff's residence in the State of New York in an action against a foreign corporation for an injury outside of the State — duty of an engineer to stop his train to prevent a probable injury to one approaching the track.*

In an action to recover damages for the death of the plaintiff's intestate, who was killed by one of the defendant's trains while attempting to drive across the defendant's railroad in Connecticut, the plaintiff, who removed from that State to New York only a few days before the commencement of the action, testified that she removed from Connecticut to Brooklyn because she thought she might be able to earn a better living, and partly for the purpose of beginning the suit, and made the further statement, "I do not intend to go back to Connecticut when this suit is completed unless I have a better position offered me. I think that I shall stay in Brooklyn after this suit is finished. I have not made up my mind quite about that. I have a very good position, and I think that I shall probably stay here. I haven't formed a definite intention in relation to

my future residence.   In January I came here with the intention of staying here; living here."
*Held,* that such testimony was sufficient to sustain a finding that the plaintiff was a resident of the State of New York at the time of the commencement of the action.
Where, in such a case, the evidence in behalf of the plaintiff tends to show that the deceased exercised due precaution in approaching the track, stopping when at a distance of eighty or ninety feet, and looking in the direction whence the train was coming, and again stopping when only ten feet from the railroad, and that the deceased then drove on and was struck by the locomotive, it is proper for the court to charge upon the request of the plaintiff that "If the engineer saw the deceased was in danger of being run into when he reached the crossing, provided the speed of his engine was not checked, it was his duty to do all reasonably within his power to prevent the disaster by proper efforts to stop his train as soon as he could," the natural meaning of such instruction being that if the engineer perceived that the conduct of the deceased rendered a collision likely to occur should the train keep on, it was incumbent upon the engineer to make a reasonable effort to stop.
Goodrich, P. J., and Woodward, J., dissented.

Appeal by the defendant, The New York, New Haven and Hartford Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 3d day of June, 1898, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 2d day of July, 1898, denying the defendant's motion for a new trial made upon the minutes.

*Henry W. Taft,* for the appellant.

*John M. Gardner,* for the respondent.

Willard Bartlett, J.:

This is an action to recover damages for the negligent killing of the plaintiff's husband, in Connecticut.   The defendant is organized under the laws of that State and asserts that it is a foreign corporation which can be sued here only in the cases provided for in section 1780 of the Code of Civil Procedure.   Whether it is a foreign corporation within the meaning of that section has been doubted. (*Phelps* v. *N. Y., N. H. & H. R. R. Co.,* 17 App. Div. 392.) But, assuming that it is, the plaintiff could not maintain the suit in this jurisdiction without being a resident of the State of New York. She formerly lived in Connecticut and moved to this State in Janu-

ary, 1898, only a few days before the commencement of the action. At the time of the trial she dwelt in the borough of Brooklyn, and worked for a corporation in the borough of Manhattan. She testified that she removed from Connecticut to Brooklyn because she thought perhaps she might be able to earn a better living here and also partly for the purpose of beginning this suit. As to her intention in respect to her residence, she said: "I do not intend to go back to Connecticut when this suit is completed unless I have a better position offered me. I think that I shall stay in Brooklyn after this suit is finished. I have not made up my mind quite about that. I have a very good position, and I think that I shall probably stay here. I haven't formed a definite intention in relation to my future residence. In January I came here with the intention of staying here; living here."

The testimony of the plaintiff herself was the only evidence on the subject of her residence. At the close of the case one of the grounds stated for the defendant's motion to dismiss was that it did not appear that the plaintiff was a resident of this State within the meaning of the statute giving the court jurisdiction of actions against foreign corporations, and this point is the first which we are called upon to consider upon the present appeal. The simple physical change from Connecticut to Brooklyn, it is argued, was not enough. There must also, it is said, be an intention that the change shall be permanent; while here the plaintiff had not made up her mind definitely one way or the other as to her future abode.

In the *Phelps Case* (*supra*) the question of the plaintiff's residence was held to have been properly left to the jury, but there the plaintiff testified positively that he had made up his mind to come to New York to live permanently. It is true that the intent of the plaintiff here is not so clearly manifested, but, so far as she had formed any plan for the future, it would seem that she contemplated remaining in Brooklyn rather than going anywhere else. To effect a change of residence there must be an intent to abide in another place, accompanied by an actual going to that place and abiding there. While to constitute a person a resident of a State he must intend to make, and actually make, that State his home, it is not necessary that he shall have determined to make it always his home. We think that the plaintiff's testimony was sufficient to sustain a finding that

she was a resident of the State of New York at the time of the commencement of the action, and consequently it would have been error for the court to dismiss the complaint on the ground of non-residence. If counsel for the defendant had regarded the evidence on this subject as capable of supporting conflicting inferences, he should have asked to have the question submitted to the jury, but no such request appears to have been made, and the matter of the plaintiff's residence is not mentioned in the judge's charge.

The plaintiff's intestate was killed by one of the defendant's trains while he was attempting to drive across the tracks of the Berkshire division of the defendant's railroad in the town of Derby, Connecticut. The highway on which he approached the line descends quite abruptly toward the railroad, the grade being about ten feet to the hundred. The evidence in behalf of the plaintiff tended to show that the deceased exercised due precaution in approaching the track, the view of which was partly obstructed by an embankment and a fence. There was testimony to the effect that he stopped at a distance of eighty or ninety feet and looked in the direction from which the train was coming, and that he stopped again when only ten feet from the railroad. He then drove on and was struck by the locomotive and killed. The proof could be so viewed as to lead to the conclusion that no signal whatever was given of the approach of the train to the crossing until too late to serve as a warning, and that the train was running down grade at a high rate of speed. The evidence in respect to negligence and contributory negligence was such as to require the submission of the case to the jury, and the verdict in favor of the plaintiff should stand unless the learned trial judge erred in charging the plaintiff's first request. This alleged error is the only other point which it is necessary for us to discuss.

That request was in these words : "If the engineer saw the deceased was in danger of being run into when he reached the crossing, provided the speed of his engine was not checked, it was his duty to do all reasonably within his power to prevent the disaster by proper efforts to stop his train as soon as he could."

If this meant, as is argued by counsel for the appellant, that the engineer was bound to do something to stop his train merely because he saw the deceased at a distance of 100 feet from the track driving

toward the crossing apparently inattentive to the approach of the train, the proposition was incorrect. The engineer could properly assume that such a traveler would see the approaching train or heed the statutory signals of its approach, if they were given, and would not drive heedlessly on to destruction and death. But such is not the natural meaning of the instruction. It was only if the engineer perceived that the conduct of the deceased rendered a collision likely to occur should the train keep on, that the jury were advised that it was incumbent upon the engineer to make a reasonable effort to stop. In other words, it was only when the engineer saw that the life of the plaintiff's intestate was in danger. That this is the true construction of the language used by the court, and that it must have been so understood by the jury, is made manifest by a reference to the 7th and 8th propositions which were subsequently charged, at the request of the defendant, in these words :

" 7. The engineer of the train was justified in assuming, if his locomotive was in sight and the horse was under control, that an attempt would not be made to pass in front of the locomotive.

" 8. The engineer was also justified in assuming that, if the plaintiff's intestate could have seen or heard the train in time to remain in a place of safety, he would have remained there."

As qualified and explained by these additional statements, the previous instruction given at the plaintiff's request was not erroneous and could not have been misapprehended.

We think the judgment should be affirmed.

All concurred, except WOODWARD, J., who read for reversal, with whom GOODRICH, P. J., concurred.

WOODWARD, J. (dissenting):

The court had charged the jury fully as to its duties in the premises, and at its close counsel for the plaintiff asked that the jury be instructed that, " If the engineer saw the deceased was in danger of being run into when he reached the crossing, provided the speed of his engine was not checked, it was his duty to do all reasonably within his power to prevent the disaster by proper efforts to stop his train as soon as he could." This was duly excepted to on behalf of the defendant, but the court so charged. It was in evidence that the engineer of the train saw plaintiff's intestate when the engine

was 500 feet from the crossing, and that the deceased was then approaching the track with the evident intention of crossing; and for the court to charge as a matter of law that the defendant's engineer was bound to assume that plaintiff's intestate would continue on his way, thus inviting the disaster, is clearly erroneous. The engineer is not bound to stop his engine every time he sees a team approaching a grade crossing; he has a right to assume, the team being under control, that the driver will stop in time to avoid the danger; and it is only when the situation is such that the driver of the team, in the exercise of reasonable care, will not be able to protect himself, that the duty is imposed upon the defendant to bring its train to a standstill. "An engineer is not bound to stop his train," say the court in the case of *Chrystal* v. *Troy & Boston R. R. Co.* (105 N. Y. 164, 170), "the moment he sees some living object upon the track. He has the right, in broad daylight, when his train is perfectly visible and its approach must be heard and known, at least in the first instance, to assume that the object, whatever it is, will leave the track in time to escape injury. * * * Reasonable care in the management of trains, which must make their time between stations and have the right of way, does not require more. * * * All the engineer was bound to do after the discovery of the peril was to use reasonable diligence and care to avert it." In other words, the railroad having the paramount right at crossings, the engineer has the right to assume, in the absence of special circumstances, that persons approaching the crossing will stop in time to avoid collision; and he is charged with no higher duty than the exercise of reasonable care in the management of his train to avoid collisions at crossings, and the charge of the trial court, under the circumstances of this case, was error. Nor is this error cured by the further charge of the court, at the request of defendant's counsel, that "the engineer of the train was justified in assuming, if his locomotive was in sight and the horse was under control, that an attempt would not be made to pass in front of the locomotive," and that "the engineer was also justified in assuming that if the plaintiff's intestate could have seen or heard the train in time to remain in a place of safety he would have remained there."

These additional propositions were made without withdrawing

the one which had already been made to the jury with the approval of the court, and there was thus before them two statements of the law diametrically opposed, and the jury was left to guess which, if either, of the rules of law was correct, rather than to determine the questions of negligence, or lack of contributory negligence, on the part of the parties to the action. As was said by the court in the case of *Phillips* v. *N. Y. C. & H. R. R. R. Co.* (127 N. Y. 657): " Erroneous instructions can be effectually cured only by their withdrawal in terms so explicit and unequivocal as to preclude the inference that the jury may have been influenced by them." In the case of *Chapman* v. *Erie Ry. Co.* (55 N. Y. 579) the court charged the jury : " But if, after a competent and proper person is employed for such a duty, if his habits become such that it is unsafe to trust him any longer in that capacity, the company are bound to use, through their proper officers, such reasonable care and diligence in ascertaining what the man is, after he is employed, as they would be in his original employment." On appeal, after pointing out the obvious error of this rule, the court say : " It is not quite clear, from the whole charge, how far the learned judge intended to go in the direction indicated. During a colloquy between the judge and the counsel upon the point, the former used language tending partially to qualify the import of that quoted, but this portion of the charge was not withdrawn and the jury might have acted upon it. To obviate an erroneous instruction upon a material point, it must be withdrawn in such explicit terms as to preclude the inference that the jury might have been influenced by it." It is clear, then, that the instruction given to the jury, at the request of the plaintiff's counsel, being erroneous, was not cured by the subsequent charge of the court at the request of defendant's counsel. (*Kelly* v. *Third Ave. R. R. Co.*, 25 App. Div. 603, 607.

The judgment should be reversed and a new trial granted, costs to abide the event.

Judgment and order affirmed, with costs.