In the Matter of the Application of MAX HOROWITZ and Another, Copartners, Doing Business under the Trade Name and Style of the MOELLER BOARDING SCHOOL, Respondents, for a Peremptory Order of Mandamus against THE BOARD OF EDUCATION OF THE CITY OF YONKERS and Others, Appellants.

Second Department, June 25, 1926.

**Schools — attendance — tuition — children of non-residents boarding in city at boarding place for children are not residents of city — fact that parents state they have surrendered control does not change residence — city not required to afford free instruction under Education Law, § 567.**

Children of non-residents of the city of Yonkers, who are being boarded at a so-called boarding school, are not residents of the city entitled to free instruction in the public schools under section 567 of the Education Law, but are residents of the place where their parents reside, notwithstanding the contention by the petitioners, who seek mandamus to compel the board of education of the city of Yonkers to enroll the children in the public schools, that the parents of the children have surrendered their care, custody and control to the petitioners, that the children have no established home except at the alleged boarding school, and that the petitioners stand *in loco parentis* to the children.

No permanency of domicile of the children in the petitioners' boarding house is shown, since it appears that the parents have the right to remove the children therefrom at any time.

APPEAL by the Board of Education of the City of Yonkers and others from a peremptory mandamus order of the Supreme Court,

**234** Matter of Horowitz *v.* Bd. of Education of Yonkers.

Second Department, June, 1926. [Vol. 217

made at the Westchester Trial Term and entered in the office of the clerk of the county of Westchester on the 2d day of June, 1926, directing the appellants forthwith to enroll in the public schools of the city of Yonkers the children residing at 87 Alta avenue in said city, whose names are set forth in the affidavits on file in this proceeding.

*Arthur C. Hume, Corporation Counsel,* for the appellants.

*Benjamin W. Moore,* for the respondents.

*Wendell P. Barker,* for Park Hill Residents Association, appearing as *amicus curiæ.*

Kelly, P. J. I think the learned justice at Trial Term was wrong in his decision in this case. He was commendably interested in the welfare of the twenty children, aged from six to twelve or thirteen years, inmates of the " Moeller Boarding School " recently established in Yonkers by Mr. Horowitz and Mrs. Lipstein, who it is claimed are denied the constitutional right to free education given them by the State Constitution (Art. 9, § 1). The learned justice has found as matter of fact that these children " are actually domiciled, are living and reside at 87 Alta Avenue, Yonkers; " that the parents of the children " have surrendered the care, custody and control of said children to Max Horowitz and Bertha Lipstein; " that the children " have no established home except the home at 87 Alta Avenue; " that Max Horowitz and Bertha Lipstein stand *in loco parentis* to the children; that it is the duty of Mr. Horowitz and Mrs. Lipstein to send the children to school; and as a conclusion of law that a peremptory mandamus order should issue to the board of education, the superintendent of schools and the principal of Public School No. 18, commanding them to receive and enroll the children as pupils in said school.

But, commendable as are the motives of the learned justice, it seems to me that the order works grave injustice not only to the children confided to the care of the petitioners but also to the educational authorities of the city of Yonkers and the taxpayers, and to the thousands of children residing with their parents in the city who cannot be accommodated in the public schools and who can only attend school on half time.

The young children in the " Moeller Boarding School " recently established in Yonkers by Mr. Horowitz and Mrs. Lipstein, who prior to March, 1926, conducted " a boarding house for children " in the Bay Ridge section of Brooklyn, are now attending one of the public schools in New York city under order of the New York city board of education, but Mr. Horowitz complains that the New York city school is about three miles " from where they

reside " and he has to transport them to and from the school in an auto bus. He says " it is a great handicap to send these children to a school so far from home for they cannot return for lunch and must take the bus trip twice a day."

Whether the " handicap " is on the children or Mr. Horowitz, who claims to stand *in loco parentis* towards them, is not apparent. I suppose he has to pay for the auto bus, but I take it he would have to provide them with " lunch " in any case, although in this progressive age I believe the board of education in New York assumes to supply lunches to school children in addition to medical care, clothing and other necessities which under old time American ideas should be supplied by their parents. Children have been carrying lunch boxes or lunch baskets to school in this country since the signing of the Declaration of Independence.

The Legislature of the State in accordance with the command of the People in the Constitution (Art. 9, § 1), have provided a system of free schools where all the children in this State may be educated. It is provided in the Education Law (Laws of 1910, chap. 140), section 567, as follows:

" § 567. Common schools free to resident pupils; tuition from nonresident pupils. 1. A person over five and under twenty-one years of age is entitled to attend the public schools maintained in the district or city in which such person resides without the payment of tuition.

" 2. Nonresidents of a district, if otherwise competent, may be admitted into the school of a district or city, upon the consent of the trustees, or the board of education, upon terms prescribed by such trustees or board.

" 3. The school authorities of a district or city must deduct from the tuition of a nonresident pupil whose parent or guardian owns property in such district or city and pays a tax thereon for the support of the schools maintained in such district or city the amount of such tax."

By chapter 399 of the Laws of 1923 there was added to this section a new subdivision, as follows:

" 4. The inmates of a duly incorporated orphan asylum or other institution for the care, custody and treatment of children, the cost of whose support and maintenance is a charge against a county, city or other municipality, other than children who were sent to such institution from the city or school district in which such institution is located, shall not be entitled to the privileges of the school in the school district in which such institution is located, unless there is sufficient room in such school for the accommodation of such inmates and a sufficient number of teachers

**236** MATTER OF HOROWITZ *v.* BD. OF EDUCATION OF YONKERS.

Second Department, June, 1926. [Vol. 217

for the instruction thereof. The trustees or other authorities in charge of any such institution may contract with the trustees or board of education of the school district in which such institution is located for the instruction of such inmates. The cost of the instruction of such inmates in the school in the district shall be paid by the county, city or municipality which is liable for the payment of the cost of their support and maintenance."

Said subdivision 4 was amended by chapter 526 of the Laws of 1924, to read as follows: " The inmates of a duly incorporated orphan asylum or other institution for the care, custody and treatment of children, other than the children of the officers and employees of such institution, shall not be deemed to be residents of the school district in which such institution is located. The trustees or other authorities in charge of any such institution may contract with the trustees or board of education of the school district in which such institution is located for the instruction of such inmates. If such inmates are supported and maintained at the expense of a county, city or other municipality, the cost of the instruction of such inmates in the school in the district shall be paid by the county, city or municipality which is liable for the payment of the cost of their support and maintenance."

It seems to me that the learned justice at Trial Term was wrong in his finding of fact that these young children were residents of the city of Yonkers. True, they are inmates of the boarding house operated by Mr. Horowitz and Mrs. Lipstein in that city, misnamed " Moeller Boarding School," because it is not a school in any sense of the word. The learned justice at Trial Term finds as matter of fact that it is a business enterprise conducted by the two petitioners for the profits derived from the enterprise. While it is true that the parents of the children, none of them residents of Yonkers, have assumed to surrender " the care, custody and control " of their own flesh and blood to Mr. Horowitz and Mrs. Lipstein by stereotyped affidavits in which they say that they board at various addresses in New York and Brooklyn, and that they maintain " no regular home " for their offspring, that their " financial resources and work in life " prohibit them from maintaining a home for the infants at the place where they board and that they have " therefore relinquished the care, custody and control of said child to said Max Horowitz and Bertha Lipstein absolutely for the purpose of the child's care, control and education," these are mere conclusions of the affiants, unsupported by evidence, and they are distinctly negatived by the facts found by the learned justice, that the parents have reserved the right to remove their children from the petitioners' " boarding school " and

from the care and custody of the petitioners at any time they see fit. Of course a parent cannot rid himself or herself of responsibility for the child in this way. Aside from the unnatural character of the proposition asserted, the duty of the parent to supply a home for the child continues. These little children can acquire no legal residence other than that of their parents by the act of the latter in farming them out to the care of the petitioners. Evidently it is not a question of the poverty of the parents; they are able to pay the board of these children in this establishment recently removed to Yonkers, and the profits of this boarding house appear to be sufficient to enable the parties conducting the business to purchase a twenty-two-room house in the residence section of Yonkers, situated " on an eminence overlooking the Hudson river."

The evidence on which the alleged change of residence is founded consists of thirteen separate affidavits, similar in form, verified by thirteen affiants, ten women and three men, who describe themselves respectively as the mother or father of the infant named in the affidavit, asserting that the deponent " maintains no regular home " for the infant, " and has surrendered control of said child and placed said child in the custody and care of Max Horowitz and Bertha Lipstein, who have a home for said child at 87 Alta Avenue, Yonkers, New York. Deponent's financial resources and work in life prohibit deponent from maintaining a home for said infant at the place where deponent boards, and he [or she] has, therefore, relinquished the care, custody and control of said child to said Max Horowitz and Bertha Lipstein absolutely for the purpose of the child's care, control and education." The affiants were not produced before the court. The affidavits are singularly deficient in allegations of necessary *facts*. No information is given in the case of the mothers who sign this rather unusual document, whether the child named has a father, and in the affidavit signed by the fathers the court is not informed whether the child has a mother. No reference is made to grandparents or other relatives of these children from six to twelve years of age who are turned over to the " care, control and education " of Mr. Horowitz and Mrs. Lipstein. The statement of the affiants that they maintain no " regular home " *for the infant named* may be true, but why not? *Non constat* in each case the parent may be maintaining a " regular home " for someone else, and when they say their financial resources and work in life prohibit them from maintaining a home, notice again that they refer to a *home for the infant*. The statements in the affidavit as to the inability of the parent to maintain a regular home for the infant and as to the financial resources of the affiants are the merest hearsay.

And there is no satisfactory evidence in the Horowitz petition or in his statement to the board of education. He says: " Most of the children placed in our care are either parentless or have only one of the parents living. Where both parents are living they are usually separated and maintain no homes for their children. These parents either board out or travel on business, leaving the care of their children wholly in our hands."

I am strongly of the opinion that the whole enterprise, with its misleading name " Moeller Boarding School," is contrary to public policy. It is not right that the court should, inferentially at least, accept this sort of evidence as the basis of a judgment fixing Yonkers as the residence of these children and decreeing that Max Horowitz and Bertha Lipstein stand *in loco parentis* to them. There is not a word in the affidavits or papers to show whether or not these children are possessed of property in their own right.

The custody and care of children is a matter as to which the Supreme Court of the State as well as the courts in all other civilized communities are charged with important duties and responsibilities. Young children should not be tossed about in this way without due inquiry as to the facts, nor should parents be allowed to throw off their responsibilities in this manner. The Domestic Relations Law (Art. 7, § 115 *et seq.*) provides methods by which a parent may consent to the adoption of a minor child after careful inquiry by the court and approval of the adoption. The custody and guardianship of minor children are surrounded by statutory regulations. (Id. arts. 5, 6.) While it may be that a minor child may acquire a residence apart from the parents without the statutory formalities, for instance where of necessity because of the poverty of the parents, sickness or for other good cause shown, the custody of the child is permanently transferred to a relative or to some other responsible person for the best interests of the child, the facts in such cases should be established by competent evidence. Such transfer of residence cannot depend upon the unnatural desire of a parent to rid himself or herself of the care of a child. I think the evidence before the learned trial justice upon the hearing in this matter on the alternative mandamus order was insufficient to justify his findings of fact and conclusions of law upon which the peremptory mandamus order appealed from is based.

There is no permanency to the domicile of these children in the petitioners' boarding house. The learned justice expressly finds as matter of fact, at the request of the defendants, appellants, that the parents have the right to remove the children from Yonkers and petitioners' boarding house at any time, and that

the parents reserved this right to so remove them at any time they saw fit.   In the recent case of *Matter of Blankford* (241 N. Y. 180) the Court of Appeals held that seventeen religious students at St. Andrew's Seminary in the town of Hyde Park, Dutchess county, who had expressly renounced their family connections and homes to study for the priesthood and declared their intention to reside indefinitely at the seminary, were nevertheless not entitled to vote at the elections in Hyde Park.   The court said, through CARDOZO, J. (p. 183): " Presence in the seminary without more does not work a change of domicile.   An intention to continue such presence to the end of the prescribed course is equally ineffective.   There must be evidence that irrespective of residence, present or expected, in a seminary of learning, the place in which the seminary is located has been adopted as a home (*Matter of Garvey*, 147 N. Y. 117)."

I think the order should be reversed on the law and the facts and that the proceedings should be dismissed upon the merits.

I have not referred to the facts disclosed in the affidavits submitted by the Yonkers school authorities, which were found by the learned justice at · Trial Term, showing that the schools are already overtaxed in their effort to care for the children of *bona fide* residents of Yonkers.   At the present time there are in Yonkers 104 classes with 2,982 children on part time, and in the particular Public School 18 there are 619 children on part time.   The *per capita* cost to the city of educating a child is $978.52 per annum.

The peremptory mandamus order directing appellants to admit and enroll the children in petitioners' boarding house in the public schools of Yonkers should be reversed upon the law and the facts, with costs, as contrary to the evidence and contrary to law, and proceedings dismissed, with costs.   The findings of fact and conclusions of law of the court at Trial Term inconsistent herewith are reversed and the findings of fact proposed by the board of education and the school authorities appellants are found by this court, with conclusion of law that the children named in the petition are not residents of the city of Yonkers and are not entitled to attend the public schools in that city.

RICH, JAYCOX, KAPPER and LAZANSKY, JJ., concur.

Peremptory mandamus order reversed upon the law and the facts, with costs, and proceedings dismissed, with costs.   Findings of fact and conclusions of law inconsistent herewith reversed, and findings of fact proposed by appellants found. with conclusion of law that the children named in the petition are not residents of the city of Yonkers and are not entitled to attend the public schools thereof.   Settle order on notice.