GEORGE W. McCANDLESS, as Receiver of DUQUESNE GAS CORPORATION, Respondent, v. CARLOS REUTER and Others, Defendants, Impleaded with ELEANOR MORTIMER FURLAUD, Appellant.

First Department, June 23, 1936.

*Louis B. Eppstein* of counsel [*Ira W. Hirshfield* and *Louis J. Altkrug* with him on the brief; *Eppstein & Hirshfield*, attorneys], for the appellant, appearing specially.

*Ralph Royall* of counsel [*James G. Holland* with him on the brief; *Ehrich, Royall, Wheeler & Walter*, attorneys], for the respondent.

TOWNLEY, J. This appeal presents the question whether the appellant Eleanor Mortimer Furlaud on August 10, 1933, was a resident of New York State within the meaning of section 230 of the Civil Practice Act.

Mrs. Furlaud up to the date of her marriage was a resident of New York. She was married in New York to Mr. Furlaud, a French citizen, and their first marital domicile was at Tuxedo Park. In 1926 Mr. Furlaud leased an apartment at 555 Park avenue for a term beginning October 1, 1926, and ending September 30, 1931. In this house Mrs. Furlaud's mother, Mrs. Mortimer, also had an apartment. In February, 1927, the Furlauds moved to Princeton, N. J., and occupied a house owned by Mrs. Furlaud until June, 1932. Mr. and Mrs. Furlaud became citizens of the State of New Jersey and voted there from 1928 to 1932. They paid their Federal income taxes from New Jersey and stated that they were residents of that State in their returns. They filed non-resident New York State tax returns during that period and stated that their residence was in Princeton. Mrs. Furlaud had lost her American citizenship by reason of her marriage and was again naturalized as an American citizen in New Jersey. In this proceeding she stated that she was a resident of the State of New Jersey. In some other legal documents and wills executed during that period Mr. and Mrs. Furlaud claimed to reside in Princeton.

The Furlauds had practically all of their personal belongings in Princeton and came to the 555 Park avenue apartment only occasionally for a few days at a time. This apartment was too small for a permanent occupancy of the Furlaud family. Their children went to a private day school in Princeton, spent the nights there and very rarely came to New York except for a birthday party or some special occasion. In September of 1931¦ the lease on the Park avenue apartment expired and the Furlauds thereafter had no home of their own in New York. They stayed at various hotels or with friends when in New York. After Mrs. Mortimer's death in 1929, they occasionally occupied her old apartment which they had been unable to rent. Whatever may be said in support of the claim that the Furlauds had a residence in New York within the meaning of the statute during the time that they held a lease of the apartment at 555 Park avenue, it is apparent that after

the expiration of that lease in 1931 there is absolutely no basis for a claim that there was any residence in New York.

The respondent, however, lays great stress on certain facts which are supposed to indicate continuity of domicile in New York. The facts are these: (1) Furlaud remained in active business in this city in Wall Street until June, 1932. (2) In the probate proceeding relating to Mrs. Mortimer's estate on December 20, 1929, in her brother's petition it was stated that Eleanor Furlaud resided at 555 Park avenue, and on another date, December 17, 1929, in relation to an oath and designation as coexecutor, appellant recited that she lived at 555 Park avenue, New York city. The transfer tax proceeding in the Mortimer estate (August 4, 1930) also gave her residence as at that place. (3) The Furlauds also continued to be listed in the New York Social Register as members of the Tuxedo Club and of the River Club, New York city. (4) In the original suit against Mr. Furlaud in the Federal court, there was an allegation that he was a resident of New York which was not denied.

It is manifest that the proceedings in relation to the estate of Mrs. Mortimer all occurred while Mrs. Furlaud still maintained an apartment in New York city. They have no bearing on the question of residence after that date.

The only serious point raised by the respondent is whether this adjudication in the Federal District Court suit as to the residence of Mr. Furlaud is a binding adjudication on Mrs. Furlaud. The argument is made that the wife's domicile necessarily follows her husband's. (*Matter of Daggett*, 255 N. Y. 243.) While the principle is undoubtedly true it has no application to the present facts.

In the Federal court suit the receiver of a Pennsylvania corporation was suing three foreign corporations and two individuals, Maxime Furlaud and Carlos Reuter, who were concededly not domiciled in Pennsylvania at any time. Accordingly, there was a diversity of citizenship no matter where they lived. The most that could have been done by Furlaud and Reuter, had they contested the allegation of New York citizenship at that time, would have been to effect a change of venue. Their counsel chose to waive that defect and did not raise the point. There is no contention that the Federal suit fails for lack of jurisdiction because in any event neither Furlaud nor Reuter were citizens of Pennsylvania. Accordingly, we think that the failure to deny the allegation which has matured into a finding of New York domicile in the Federal action is not such an adjudication as is final on Mrs. Furlaud by operation of the theory of law that her domicile follows her husband's. It is not based on anything more in fact

than a waiver for the purpose of that suit of her husband's privilege to question the venue.

With this point disposed of there is nothing left to the plaintiff's claim that Mrs. Furlaud was a resident of New York, except these occasional visits.

The Court of Appeals recently passed on the question presented by this appeal. In *Rawstorne* v. *Maguire* (265 N. Y. 204) the court in its opinion stated the rule as follows: " Where there is no bodily presence in the State; where there is no permanent place of abode and no domicile; it is plain that there is no residence here and no basis for the exercise of the jurisdiction of the court. It may be that while the defendant was actually in residence at the Hotel Vanderbilt, with intention to make it his home whenever he came to New York, he did reside in the State within the meaning of the statute. A person continues a ' resident ' of a State where he is domiciled even though temporarily absent from the State. A person is certainly not a ' resident ' of the State when he leaves the State to return to his domicile and gives up his home here."

Applying this rule to the facts established by this record, we find that there was no bodily presence at the time the order for substituted service was made, there was no permanent place of abode and no domicile. Under these circumstances the order for substituted service cannot be sustained.

For the purposes of this application it may be accepted that the Furlauds left the United States in June of 1932 in order to avoid the service of process in this and other suits which were threatened against them. This fact, however, does not affect the conclusion which we have reached with respect to this application. The Court of Appeals has said in the *Rawstorne Case (supra)* that parties may avoid service of process by running away. Motive is immaterial. There the defendant left the Vanderbilt Hotel because he learned that a process server was attempting personal service upon him. The court said: " He had a right to do so at any time and for any cause. He was not bound to submit himself to the jurisdiction of our courts if he chose to leave the State. Upon his return here he becomes subject to the jurisdiction of our courts if proper service of a summons is made upon him. Service by leaving the summons at a hotel while the defendant is out of the State is not a proper service and does not give the court jurisdiction of his person."

We find that the flight, if any, was a flight from Mrs. Furlaud's New Jersey domicile and not in any sense a flight from a New York domicile. We also find that if there was an abandonment of the New Jersey domicile, there is no reverter to Mrs. Furlaud's ante-marital domicile, but her marital domicile follows that of her

husband who has returned to his domicile of origin, namely, France. It must be presumed on familiar principles that his wife's domicile has followed his, if he has changed his.

The order should, therefore, be reversed, with twenty dollars costs and disbursements, and the motion to vacate the substituted service granted.

MARTIN, P. J., McAVOY and GLENNON, JJ., concur; O'MALLEY, J., dissents and votes for affirmance.

O'MALLEY, J. (dissenting). The question to be determined is one of intent. In such circumstances I am of opinion that it was incumbent upon the appellant to submit the affidavit of herself or her husband, or both, in which their intent would be unequivocally stated. It is noteworthy that neither one has seen fit to place herself or himself upon record upon this vital issue.

I, therefore, dissent and vote to affirm.

Order reversed, with twenty dollars costs and disbursements, and motion granted.