Frank E. Johnson,
Official Referee. The purpose of the proceedings is indicated in the statement. The grounds of the application are, generally, the alleged unreality of the respondents’ factual claims to be eligible to vote in Putnam County. That alleged eligibility appears to be, in all the cases heard, based upon the claimed factual situation of their physical “ residences ” in that county, coupled with their alleged state of mind (intention) as to what “residence” they each had therein. Was it a temporary and recurrent “ summer residence,” or a permanent, continuous, legal residence?
The trial record shows, in each of the 5 cases tried:
1. A verified questionnaire, filled in by each, for the information of the Attorney-General, giving factual information on these subjects.
2. Testimony by each of said respondents as to intention, state of mind, etc., concerning legal residence, and an explanation of acts, outside of the county, relevant to the alleged selection of this county as the legal residence.
3. The factual situation surrounding the continued presence, during the present and past school years, of each respondent’s children in New York City schools.
The Attorney-General fairly claims that the underlying question is: “ May a person have one residence or domicile for the purpose of voting, and another residence or domicile for the purpose of exercising other rights of residence, such as sending his children to public schools? ” (Matter of Davy [Denton], 281 App. Div. 137 [3d Dept., 1952]; Matter of Woolley, 108 N. Y. S. 2d 165 [Sup. Ct., Lewis County, 1951]; Matter of Horowitz v. Board of Educ., 217 App. Div. 233 [2d Dept., 1926]; Board of Educ. v. Crill, 149 App. Div. 407 [4th Dept., 1912]; People ex rel. Brooklyn Children’s Aid Soc. v. Hendrickson, 125 App. Div. 256 [2d Dept., 1908].)
The Davy case (supra) (Election Law) said (p. 139): “ Their intent to remain voters in the town of Coventry does not control. A voting residence does not exist as distinguished from an actual residence. A residence does not depend in any way upon the Election Law but exists entirely independent of the right to vote (People ex rel. Driscoll v. Bender, 82 Misc. 671).” (Italics supplied.)
Matter of Woolley (108 N. Y. S. 2d 168) (Election Law) held: “ The courts have held that the word ‘ residence ’ is of the same meaning as the word ‘ domicile ’ when applied to the Constitution or the Election Law. This statement requires, some explanation. A person may have several residences but has only one domicile.”
*143 In Matter of Horowitz v. Board of Educ. (supra) the Appellate Division said (p. 238) of “ residence ” as found in the Education Law: “ While it may be that a minor child may acquire a residence apart from the parents without the statutory formalities, for instance where of necessity because of the poverty of the parents, sickness or for other good cause shown, the custody of the child is permanently transferred to a relative or to some other responsible person for the best interests of the child, the facts in such cases should be established by competent evidence.”
In Board of Educ. v. Crill (supra) the. Appellate Division, after having used the fact of voting as one of the criteria for establishing residence within the Education Law, noted (p. 410): “It is true that many people have a home in the city and another in the country, and some have more, all equally permanent; and there are even some whose various places of abode are so transient and temporary that it might be difficult to determine their legal residence at a given time.”
The Brooklyn Children’s Aid Society case (Education Law) held (p. 260): “it was the intention of the Legislature that children temporarily domiciled in the district should receive free education there, unless it appeared that the parents of the children or their legal guardians had a distinct residence elsewhere which gave their children the right to free tuition, in which case, of course, the residence of the child would follow the parent.”
These cases indicate a belief on behalf of courts and Legislature that a person can only have one legal residence or domicile. While he may have complete freedom of choice as to which of several places of abode he settles upon as his domicile, he can choose only one of them and will he hound by all the consequences of the choice.
These respondents claim to be entitled to vote in Putnam County. Section 150 of the Election Law provides (emphasis supplied):
“ § 150. Qualification of voters. * * *
‘‘ A qualified voter is a citizen who is or will be on the day of election twenty-one years of age, and who has been an inhabitant of the state for one year next preceding the election, and for the last four months a resident of the county, city or village and for the last thirty days a resident of the election district in which he or she offers his or her vote.
“ Section 3202 of the Education Law provides (emphasis supplied):
*144 ‘‘ § 3202. Public schools free to resident pupils; tuition from nonresident pupils.
“ 1. A person over five and under twenty-one years of age is entitled to attend the public schools maintained in the district or city in which such person resides without the payment of tuition. * * *
“ 2. Nonresidents of a district, if otherwise competent, may be admitted into the school or schools of a district or city, upon the consent of the trustees or the board of education, upon terms prescribed by such trustees or board.
“ 3. The school authorities of a district or city must deduct from the tuition of a nonresident pupil, whose parent or guardian owns property in such district or city and pays a tax thereon for the support of the schools maintained in such district or city, the amount of such tax.”
It is elementary that residence may be acquired or. changed by sufficient overt acts and the proper decision or mental attitude, which is rightly described as an “ intention ” to acquire, or change. When the acts, in different places, are more or less similar, and the situation is visibly equivocal, the clue to which is the legal residence must be supplied through the subject exposing his state of mind, or orally, or otherwise, voicing his intention.
.In each of these cases, the respondent who claimed to reside in Putnam, admitted creating contradictory situations: using the New York City schools for free education (not allowed to those not residents of that city); filing tax returns outside of Putnam (telling the State and National Governments that he resided in New York City); maintaining a home there as fully equipped as, and occupied for a much larger part of each year than, in Putnam, thereby creating an outwardly equivocal residence situation. A choice between these alleged C residences ’ ’ might well be made, factually, and legally, between these inconsistent factual situations, deliberately created, but each respondent voluntarily took the stand to testify to his past and present state of mind, and intention, as to which ‘‘ residence ’’ was his statutory residence and domicile.
Instead of proving factually his past decision, his past choice, his past intent, each of them made such an unconvincing witness in the attempt to escape the obvious meaning of past actions, and to try to add. the needed “ intent ” to one of these states of fact, that any impartial jury would see. through the pretense. None of them paid the City of New York for teaching their “ non-resident ” children; obviously, each child was taught on the claim of New York City residence at the address recited in the questionnaire Nor did they claim to have given two resi *145 dences in their State and Federal tax returns, or even claim to have made any explanation of the “ residence ” situation in filing them outside of Putnam.
The undersigned told them, frankly, at the end of their testimony, of their failure to convince him of the truth of their oral claims, but no adjournment was then sought to produce additional proof on the vital question of fact.
The wife, in each case (herself respondent), did not testify; it would be expected that she would know when the head of the family changed the family residence from the old address (still maintained) in New York City; the children, who still continued to attend the New York City schools, where they began their education, did not appear as witnesses to corroborate the alleged later selection of Putnam County as the family residence. No proof was given of a recitation in a will of the respondent’s Putnam residence; no proof of rejecting a New York City jury notice; no claim of refusing to pay the New York City tax on automobiles, chargeable only against residents of that city; no claim of not voting in any primary or general election in that city; no claim on nonregistration there as a prospective voter. These, perhaps negative facts, would be relevant on the question of mental attitude.
Pages 285 to 305 of volume 77 of Corpus Juris Secundum cover the essential elements creating “ residence ”:
Intent is “ the essential or controlling element ” (p. 297 citing inter alia People v. Acritelli, 57 Misc. 574).
When residence is used in statutes, it means ‘‘ the permanent home ” (p. 303 citing inter alia Hislop v. Taaffe, 141 App. Div. 40).
“ Bodily presence * * * and the intention of remaining in that place, ’ ’ and that ‘‘ residence is made up of fact and intention, the fact of abode and the intention of remaining, and is a combination of acts and intention.” (P. 295, citing inter alia Rawstorne v. Maguire, 265 N. Y. 204; McCandless v. Reuter, 248 App. Div. 93.)
‘‘ Beside ’’ in the legal technical sense ‘‘ means legal domicile as distinguished from mere residence.or place of actual abode; ” legal residence or legal domicile is “ the place where a person is deemed in law to live.” (P. 285.) Besidence is from a Latin word ‘ ‘ meaning to sit down, to stay in a place, to settle, to remain.” (P. 289 citing inter alia Hurley v. Union Trust Co., 244 App. Div. 590.)
Change of residence can be effected “ only by the union of act and intent; ” and “ in order to accomplish or effect a change *146 of residence there must be intent * * * accompanied by * * * fact ”. (P. 298 citing inter alia Bump v. New York, New Haven & Hartford R. R. Co., 38 App. Div. 60, and Thompson v. Mundheim, 180 Misc. 1002.)
“ every person has, in law, a residence, and that residence cannot be lost until another is gained ”; and “ there can be only one residence, and that a person cannot have a residence in two places at the same time ”. (P. 293 citing inter alia Bischoff v. Bischoff, 88 App. Div. 126; Bean v. Bean, 95 N. Y. S. 2d 477; Maloney v. Maloney, 22 N. Y. S. 2d 334, affd. 262 App. Div. 936, affd. 288 N. Y. 532.)
That question of fact, in each case, is decided against each of them, not only because “ actions speak louder than words ”, but for failure to give impressive, or convincing testimony of their alleged ‘ ‘ election ” or “ intent ’ ’ to change residence from New York or Bronx County to Putnam County.
Submit order.